IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

MONROE RETAIL, INC et al.,

                Plaintiff,          Case No. 3:06 CV 2391

-vs-

                                   MEMORANDUM OPINION

CHARTER ONE BANK, N.A., et al.,

                Defendant.

KATZ, J.

      This matter is before the Court on motions to dismiss filed by defendants Charter One Bank NA (Doc. 64), Huntington National Bank (Doc. 66), Huntington Bancshares, Inc. (Doc. 66), JPMorgan Chase Bank N.A. (Doc. 66), JP Morgan Chase & Co. (Doc. 66), Keybank NA (Doc. 67), KeyCorp (Doc. 67), National City Bank (Doc. 66), National City Corporation (Doc. 66), Sky Bank (Doc. 72), U.S. Bank, N.A. (Doc. 66), and U.S. Bancorp (Doc. 66). All the aforementioned entities are sometimes referred to collectively herein as "Defendants." The bank entities are referred to separately as "Defendant banks" and the holding companies are referred to separately as "Defendant holding companies."

**I. Background**

      Plaintiffs in this action – Monroe Retail, Inc., Jerome Phillips, and Leo Marks, Inc. (collectively "Plaintiffs") – are garnishor-creditors in the State of Ohio. Plaintiffs allege that for the last four years they, and others like them, have obtained judgments against people who owe them money, and they have sought to collect those judgments by garnishing the judgment debtors'

funds on deposit with the various defendant banks. It is this garnishment process which forms the basis for Plaintiffs' complaint.

The Complaint alleges that pursuant to Ohio Revised Code § 2716.12, a garnishor—such as the Plaintiffs—must include in the request for garnishment a one dollar fee which is paid to the garnishee—in this case, Defendant banks—as the garnishee's sole pre-garnishment processing fee. In other words, Plaintiffs contend that Defendant banks may not impose additional garnishment fees on customer accounts prior to full recovery of the amount Plaintiffs are owed. Defendant banks, however, each imposed an additional $25 to $80 fee on garnished accounts, which was assessed prior to the relinquishment of account proceeds. Plaintiffs argue that such fees reduce the amount of recovery that they are entitled to under Ohio Revised Code § 2716.12, and as such, are illegal.

**II. Standard of Review**

Fed. R. Civ. P. 12(b)(6) provides for dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." To warrant dismissal, "it [must] appear[] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "A district court considering a defendant's motion to dismiss under Rule 12(b)(6) must construe the complaint in the light most favorable to the plaintiff and accept the plaintiff's allegations as true." *Thurman v. Pfizer, Inc.*, 484 F.3d 855 (6th Cir. 2007). However, it is unnecessary for the court to "accept as true legal conclusions or unwarranted factual inferences." *Kottmyer*, 436 F.3d at 688 (citing *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).

**III. Discussion**

This Court addresses the following issues regarding Plaintiffs' complaint and the various motions to dismiss filed by Defendants: constitutional and judicial standing; Defendant holding companies as proper parties; the "one dollar" garnishment fee language of section 2716.12; Defendants' right to set-off; and preemption of state claims by federal banking law.

**A. Standing**

The first issue this Court must address is the argument by certain defendants that Plaintiffs lack standing to bring this suit. There are two levels of standing at issue: that required by Article III of the U.S. Constitution, and the doctrine of prudential standing.

**1. Article III standing**

Article III standing requires a Plaintiff to show "proof of injury in fact, causation and redressability." *Coyne v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999). Plaintiffs must meet Article III's standing requirements by showing: 1) an injury in fact that is 2) causally related to Defendants' actions, and 3) redressable by the requested relief. *Id.* The only movant to raise the standing issue, Charter One, does not actively contest Plaintiffs' Article III standing, so the Court will address the issue only summarily.

Plaintiffs have suffered actual injuries, arising from the reduction in recoveries available after the imposition of Defendants' garnishment fees. While the legal contentions upon which they base this suit may well be flawed, Plaintiffs' argument does satisfy the "injury in fact" requirement of standing. Such fees present the necessary causal relationship between their injuries and Defendants' actions, and there is a substantial likelihood that providing the economic relief they request will redress their loss.

**2. Prudential standing**

3

Prudential standing requires first that the "plaintiff . . . assert his own legal rights and interests;" second that the "plaintiff's claim . . . be more than a generalized grievance that is pervasively shared by a large class of citizens;" and third that "the plaintiff's claim . . . fall within the zone of interests regulated by the statute in question." *Id.* Here, Defendants dispute only the first requirement of prudential standing, arguing that Plaintiffs are asserting the rights and interests of the people who were charged the fees above one dollar, not Plaintiffs' own rights and interests.

"The Supreme Court has recognized that 'a plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts . . . generally . . . stand[s] at too remote a distance to recover.'" *Id.* at 494-95 (quoting *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268-69 (1992)). In *Holmes*, such remoteness was found to exist where a third party corporation, seeking to recover for an alleged RICO violation, attempted to subrogate itself to the claims of customers indirectly harmed by their brokers after a conspiracy left them without the funds to pay customer claims. The Court found the only connection between the conspirators' acts and the losses suffered by customers to be the insolvency of the broker-dealers due to the fact that they could no longer pay their bills, a connection too tenuous to support the third party's RICO claim. *Id.* at 271, 275.

Similarly, in *Coyne*, a group of citizens representing the State of Ohio and Ohio taxpayers sought recovery of state monies that had been spent treating citizens suffering from tobacco-related illnesses. 183 F.3d at 491. The Sixth Circuit held that the plaintiffs lacked standing because their injuries were "not direct or particularized" since they sought damages for non-party smokers and the State of Ohio itself. *Id.* at 495-96.

4

In the instant case, Defendant Charter One draws from *Coyne* and *Holmes* to suggest that Plaintiffs' complaint alleges only harm flowing from the misfortunes of third parties, i.e., the customers who were actually assessed the fees. Charter One argues that Plaintiffs must attempt to "stand in the shoes" of their debtors in order to establish any basis for standing, attenuating their claims as in *Coyne* and *Holmes*. Plaintiffs, on the other hand, insist that Ohio law confers upon them rights that have been directly harmed, without reference to the rights of their debtors.

Specifically, Plaintiffs cite Ohio Revised Code § 2716.21(F)(1), which provides:

> If a garnishee fails to answer as required by this section, answers and the garnishee's answer is not satisfactory to the judgment creditor, or fails to comply with the order of the court to pay the money owed or deliver the property into court or to give the bond authorized under division (B) of this section, the judgment creditor may proceed against the garnishee by civil action.

As Plaintiffs note, language like this was lacking in *Holmes*, where the RICO statute under which the third-party sought to recover conferred standing on "any person injured in his business or property by reason of a violation [of the Act]." The Court's holding in *Holmes* was based on limitless litigation fears arising from indirect injuries; a concern later implicated by the claims in *Coyne*, but lacking in this case. Here, Ohio's statute contains a specific grant of a civil remedy to garnishors. Because of this specificity and the fact that Plaintiffs allege a direct injury to their rights under § 2716.12, this case differs in an important respect from *Holmes* and *Coyne*. As such, Plaintiffs have satisfied the requirements for prudential standing.

**B. Defendant holding companies as proper defendants**

In the motion filed by Defendant holding companies, Huntington Bancshares, Inc., JPMorgan Chase and Co., National City Corporation, and U.S. Bancorp argue that Plaintiffs have failed to state claims against Defendant holding companies because the complaint does not allege

5

that the holding companies offer deposit accounts or charge garnishment fees. Additionally, Defendants ask this Court to dismiss Plaintiffs' claims to the extent that they derive from the conduct of subsidiaries.

In reviewing a motion for judgment on the pleadings or a motion to dismiss, this Court must accept the complaint's factual allegations as true, finding that the moving parties are entitled to judgment only if the Plaintiffs "can prove no set of facts . . . that would entitle [them] to relief." *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d at 512.

Here, as Plaintiffs suggest, the complaint alleges that the Defendant holding companies charged unlawful garnishment fees, making them directly liable to Plaintiffs. In order to prevail on this motion under *Ziegler*, Defendants would have to show a complete lack of merit in Plaintiffs' claims, which they have failed to do.

Regarding the conduct of subsidiaries, Plaintiffs allege that they "may proceed on a theory of piercing the corporate veil even [though their] complaint does not specify any intent to proceed under the doctrine." *Gill v. Byers Chevrolet LLC*, No. C2: 05-CV-982, 2006 WL 2460873 (S.D. Ohio Aug. 23, 2006) (citing *Dalicandro v. Morrison Road Dev. Co.*, Nos. 00AP-619 and 00AP-656, 2001 Ohio App. LEXIS 1765 at * 20-21 (Ohio Ct. App. April 17, 2001)). The Southern District of Ohio has required that the allegation of facts "at the very least, implicate the . . . factors" necessary to prevail under state law. *Gill*, No. C2: 05-CV-982, 2006 WL2460873.

The relevant state law standard comes from *Belvedere Condominium Unit Owners' Association v. R.E. Roark Companies, Inc.*, 67 Ohio St.3d 274, 289 (1993), in which the Ohio Supreme Court listed three considerations for determining when a corporate form may be disregarded. The considerations are:

6

> (1) control over the corporation by those to be held liable [is] so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Id.* Under Fed. R. Civ. P. 8(a)(2), a plaintiff is required to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must put the defendant on notice as to the plaintiff's claim and its grounds, but the complaint need not contain all of the particularities of the claim. *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976); *see also Conley v. Gibson*, 355 U.S. 41, 47 (1957) ("[A]ll the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.").

In this case, Plaintiffs' complaint alleges that Defendant holding companies "deducted [garnishee] fees . . . through their subsidiaries." While this statement does not expressly incorporate the allegations necessary to ultimately prevail under *Belvedere*, it does implicate each factor. Plaintiffs have met their pleading burden. *Compare Salatin v. Trans Healthcare of Ohio, Inc.*, 170 F. Supp.2d 775, 782 (N.D. Ohio 2001) (finding that the plaintiff's complaint did not sufficiently implicate the *Belvedere* factors where it provided: "if THIO is found to have breached the Lease, that breach, by extension, may extend to THI depending upon the relationship between THIO and THI") *with Dalicandro v. Morrison Road Development Co.*, Nos. 00AP-619, 00AP-656, 2001 WL 379893 (Ohio App. 2001) (finding that Plaintiffs had given fair notice and were entitled to proceed under the doctrine of piercing the corporate veil where the individual Defendant was named and described as using "his company to engage in . . . conversion and breach of contract").

Since Plaintiffs have listed the individual holding companies in their complaint, and implied that the holding companies deducted garnishee fees through their subsidiaries, Plaintiffs have satisfied their pleading burden. Therefore, neither Plaintiffs' claims nor Defendant holding companies should be dismissed on this specific basis.

### C. The garnishment fee language of Ohio Rev. Code § 2716.12

Ohio Revised Code § 2716.12 provides:

> The affidavit required by section 2716.11 of the Revised Code in a proceeding for garnishment of property, other than personal earnings, shall be accompanied *by one dollar as the garnishee's fee* for compliance with the order, no part of which shall be charged as court costs.

(emphasis added). Plaintiffs and Defendants both argue that this provision is unambiguous; however, the parties differ significantly on their respective interpretations of the language. Plaintiff argues that the legislature's use of the term "the" in "the garnishee's fee" limits Defendants' recovery to the one dollar fee provided for in the statute. Defendants, on the other hand, assert that while this provision provides a one dollar fee for garnishee compliance, it fails to state that this is the exclusive fee a garnishee may collect—Defendants believe this legislative omission to be indicative of the legislature's intention to allow garnishee banks to impose additional fees. As a contrast to this language, Defendants cite Ohio Rev. Code § 1321.79, which contains a clearer limitation on the fees a finance company may charge: "A premium finance company shall not charge, contract for, receive, or collect a finance charge other than as premitted by sections 1321.71 to 1321.83 of the Revised Code."

To analyze statutory text, this Court must begin with the statute's plain meaning. Where the language is clear, the judicial inquiry ends. *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992). In the case of Ohio Revised Code § 2716.12, Defendants' argument is

8

persuasive because the statute contains no clear limitation on additional garnishment charges; it simply provides a one dollar fee "for compliance with the order."

Plaintiff argues that the goal of § 2716.12 was to avoid inconsistencies in garnishment procedures by imposing an exclusive procedure for "post-judgment garnishment of property." *Laws of Ohio* 129 v H 254 at 26. However, Plaintiffs fail to provide persuasive guidance as to what this exclusive procedure was or was not intended to entail. There is no apparent basis for the conclusion that § 2716.12 was intended to limit bank recovery to the one dollar referenced therein. It is also important to note that Plaintiffs do not argue that section 2716.12's "one dollar" provision prohibits Defendants from imposing additional contractual fees, but rather, Plaintiffs argue that their garnishment fees must be satisfied before Defendant banks may impose such fees beyond one dollar. This interpretation further complicates Plaintiffs' argument: the Court would have to find that the language of section 2616.12 allows fees beyond the one dollar, but that somehow there is an implied order for collection of the fees that allows first for one dollar to the banks, then for collection by the garnishors, and only then for additional fees to the bank. There is no textual support for this contention.

Defendants argue that Plaintiffs' interpretation would conflict with Title 11 of the Ohio Revised Code, which contains provisions that denote bank power, including a provision that allows banks to set the terms and conditions of each deposit contract. This Court will construe § 2716.12 in a manner which creates no conflict with Title 11. Furthermore, if the legislature had intended to limit banking power, it would have included the limiting provision in Title 11, rather than Title 27. As previously indicated, Title 11 contains provisions regarding banking power. Title 11 is entitled "Financial Instutitions," while Title 27 governs court procedures.

9

**D. Section 2716.12 and set-off rights**

"As a general rule, the courts have held that a bank may set off a bank account against the matured indebtedness of its depositor, although the bank has been garnisheed at the instance of a creditor of the depositor." *Walter v. National City Bank of Cleveland*, 42 Ohio St.2d 524,525, 330 N.E.2d 425 (1975) (quoting *Shuler v. Israel*, 120 U.S. 506 (1887)). A bank has a priority in funds that are due or collectible at the time of service under the contract between the debtor and bank. *Id.* at 527.

Plaintiffs do not dispute this right, nor do they suggest that § 2716.12 preempts it. Plaintiffs argue that the funds are to be frozen at the time of service, with no right to deduct contractual charges and expenses that accrue as a result of the garnishment. The main discrepancy, therefore, relates to the time at which the garnishment takes effect. However, before it is appropriate to address this issue, the Court would have first to conclude that Defendants' common law right of setoff is consistent with Plaintiffs' interpretation of § 2716.12.

The parties address this issue passingly, so this Court finds it sufficient to note that, in light of the long history of the practice and the fact that the legislature failed to explicitly exclude it, § 2716.12 is not intended to interfere with the common law right of setoff. *See City of Cleveland v. Vincenti*, 84 Ohio App. 3d 565, 568 (Ohio Ct. App. 1992) ("The General Assembly is well versed in the command and use of the English language and could easily have inserted such a prohibition into the statute, but it did not do so. We will not intrude on the legislative domain by finding such a prohibition where it does not presently exist.").

Defendants argue that under Ohio law, "[t]he attaching or garnishing creditor stands in the shoes of the defendant and is in no better position with regard to the attached or garnished

10

property or debt than the defendant." *Holly v. Dayton View Terrace Imp. Corp*, 25 Ohio Misc. 57, 67, 263 N.E.2d 337, 343 (Ohio Com. Pl. 1970). *See also Sesko v. Caw*, 2006 WL 2976458, at *1 (Ohio App. Oct 19, 2006) (noting that the judgment creditor steps into the shoes of judgment debtor). Defendants believe that since customers have agreed to pay the required garnishment fees (through their deposit agreements), garnishor-creditors are only entitled to amounts left after those fees are assessed.

Plaintiffs, on the other hand, argue that the "amount of money [available for garnishment] . . . is to be determined at the time of service of the notice of garnishment . . . and not at sometime thereafter." *Bitter v. Jones*, 1999 Ohio App. LEXIS 564, 10-11 (Ohio Ct. App. 1999). In support of this proposition, Plaintiffs cite several sections of the Ohio Revised Code that mirror the statutory language used in *Bitter*. *See, e.g.,* Ohio Rev. Code § 2716.13(B) (The garnishment order "shall bind the property . . . of the judgment debtor in the possession of the garnishee at the time of service."). However, even in *Bitter*, the court recognized the right of banks to set off amounts owed under deposit agreements.

While it is true that the *Bitter* court went on to hold that the value of an account should be determined as of the time of service, this determination is hardly controlling because the case was decided on the basis of an ordinary business creditor who was found to lack the equitable right of set-off. *Bitter* is factually distinguishable from the case at bar, and it does not preclude the assessment of contractual fees imposed due to garnishment. As Defendants argue, pursuant to their deposit agreements, the fee is assessed against the debtor at the moment a garnishment order is served, leaving the depositor entitled only to the account balance minus the fee. Therefore, since garnishors "stand in the shoes of the debtor," they are not entitled to the full account value.

11

Despite the fact that no cases have been presented from Ohio on this exact point, Defendants' position is consistent with the rulings of other jurisdictions. For example, in *Baxter Healthcare Corporation v. Universal Medical Labs*, 760 So.2d 1126, 1126 (Fla. App. 2000), the court observed:

> We agree with appellant's attorney that the writ of garnishment became effective as to the monies in the account within the blink of an eye of the service of the writ. But since the depositor agreed to pay the bank a $65 per notice of a garnishment fee, the bank's right to offset came into existence within that same blink of an eye. This tie, we conclude, should go to the one in possession of the money sought.

This Court grants Defendants' motions to dismiss on the basis of the language of section 2716.12 and the preservation of Defendants' right to set-off.

**E. Preemption**

Even if it were the case, which it is not, that Plaintiffs' interpretation of section 2716.12 were at least as reasonable as Defendants' and does not interfere with set-off rights, this Court would still find for Defendants because Plaintiffs' claims are preempted by federal law and therefore unsustainable in this Court.

**1. Preemption as to national banks**

While a presumption normally exists against preemption, this presumption does not apply "when [a] State regulates in an area where there has been a history of significant federal presence," *United States v. Locke*, 529 U.S. 89, 108 (2000), such as national banking. This means that "[s]tate attempts to control the conduct of national banks are void if they conflict with federal law, frustrate the purposes of the National Bank Act, or impair the efficiency of national banks to discharge their duties." *Bank of America v. City and County of San Francisco*, 309 F.3d 551, 561 (9th Cir. 2002).

12

In fact, there is authority that a presumption in favor of preemption applies in the national banking context. "[A]s the Ninth Circuit has noted,

> Congress has legislated in the field of banking from the days of *M'Culloch v. Maryland*, creating an extensive federal statutory and regulatory scheme. The history of national banking legislation has been one of interpreting grants of both enumerated and incidental powers to national banks as grants of authority not normally limited by, but rather ordinarily pre-empting contrary state law. *Bank of Am. v. City & County of San Francisco*, 309 F.3d 551, 558 (9th Cir. 2002) (internal quotation and citation omitted).

*Wachovia Bank, N.A. v. Watters*, 431 F.3d 556, 560 n.3 (6th Cir. 2005).

Plaintiffs argue that while there is normally a presumption of preemption in the national banking context, the issue presented by Defendants' garnishment practices is not entitled to this presumption because it does not relate to the incidental powers afforded to national banks, but rather to practices that effectively impose debt collection fees on the Plaintiff garnishors. Plaintiffs further argue that "debt collection" is an area in which states have retained power to regulate the practices of national banks. *See* 12 C.F.R. § 7.4007(c) ("State laws on the following subjects are not inconsistent with the deposit-taking powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' deposit-taking powers: . . . Rights to collect debts").

Under 12 U.S.C. § 24(Seventh), national banks possess all "incidental powers . . . necessary to carry on the business of banking . . . [including those related to] receiving deposits." In *Bank of America, N.A. v. Sorrell*, 248 F.Supp.2d 1196, 1198 (N.D. Ga. 2002), the court analyzed a similar issue, in which a Georgia state statute prevented banks from charging

> any fee of any kind to a person or corporation who does not have an account with that institution for cashing a check or other instrument which is payable to such person or corporation and is drawn on the account of another person or corporation with that institution.

13

The court held that this statute was preempted by the National Bank Act because it was in direct conflict with 12 U.S.C. § 24(Seventh) and 12 C.F.R. § 7.4002(a), which allow banks to assess fees against "any party that obtains a product or service from the bank." *Id.* at 1199.

In *City and County of San Francisco, supra*, the court addressed the validity of city ordinances "prohibiting financial institutions [including national banks] from charging ATM fees to non-depositors." 309 F.3d at 556. These ordinances were also held to conflict with the incidental powers granted by 12 U.S.C. § 24(Seventh) and 12 C.F.R. § 7.4002(a), because the court interpreted the National Bank Act and regulation as allowing banks to "collect fees for [the] provision of authorized services" whether the ATM user is a depositor or non-depositor. *Id.* at 562.

Plaintiffs attempt to distinguish these cases by suggesting that both *Sorrell* and *City and County of San Francisco* involved statutes preventing the charging of fees to banking "customers." However, regardless of whether Plaintiffs are technically customers under Defendants' garnishment procedures, these two cases stand for the proposition that, in general, any interference with a national bank's right to assess service fees is necessarily preempted whether it directly affects a depositor's account, or indirectly affects the amount a garnishor will receive.

Notably, this conclusion is consistent with several opinion letters submitted by the Office of the Comptroller of Currency ("OCC"), which are entitled to this Court's deference in this circumstance. 12 U.S.C. § 93a grants the OCC the authority to prescribe rules and regulations for the national banking industry.

14

> Except to the extent that authority to issue such rules and regulations has been expressly and exclusively granted to another regulatory agency, the Comptroller of the Currency is authorized to prescribe rules and regulations to carry out the responsibilities of the office, except that the authority conferred by this section does not apply to section 36 of this title or to securities activities of National Banks under the Act commonly known as the "Glass-Steagall Act".

12 U.S.C. § 93a. Accordingly, OCC regulations have specifically provided for the assessment against "customers of non-interest charges and fees, including deposit account service charges. 12 C.F.R. § 7.4002(a). Defendants contend that the garnishment charges they imposed on customer accounts fall within this provision, and several OCC opinion letters solicited by Defendants affirm this assertion. One, for example, advises that where a bank considers 1) "[t]he cost incurred by the bank in providing the service;" 2) "[t]he deterrence of misuse by customers of banking services;" 3) "[t]he enhancement of the competitive position of the bank in accordance with the bank's business plan and marketing strategy;" and 4) "[t]he maintenance of the safety and soundness of the institution," then it may "exercis[e] its discretionary authority to charge non-interest fees and charges -- such as the garnishment fees at issue here -- pursuant to section 7.4002(a)." OCC Opinion Letter, Doc. 74, Ex. 6 at 4.

Plaintiff contends that under *Christensen v. Harris County*, 529 U.S. 576 (2000), opinion letters are not entitled to deference by federal courts. *Christensen* involved an opinion letter, issued by the United States Department of Labor's Wage and Hour Division, on the issue of whether the Fair Labor Standards Act prohibited Harris County from requiring its employees to use their accrued compensatory time prior to reaching the maximum accrual permitted by the Act. *Id.* at 580. The opinion letter indicated that requiring employees to use their compensatory time would only be permissible if a pre-existing agreement specifically provided for such a power. *Id.* at 580-81. Contrary to this opinion, Harris County adopted a policy that made the use of the time

15

mandatory, leading its employees to argue, in part, that the Wage and Hour Division's letter was entitled to deference. *Id.* at 581, 587.

In addressing this issue, the Supreme Court held that "interpretations contained in formats such as opinion letters are 'entitled to respect' under our decision in *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), but only to the extent that those interpretations have the 'power to persuade.'" *Id.* at 587. Ultimately, the Court concluded that the Division's interpretation was unpersuasive because the Court construed the statute to ensure only that an "employee [would] receive timely compensation for working overtime," rather than requiring an "exclusive method by which compensatory time [could] be used." *Id.* at 583-84.

The actual relevance of *Christensen* to this case is less than clear. In *Christensen*, the Wage and Hour Division's opinion was analyzed in the fashion of a non-legislative rule because the Division's opinion sought to directly construe the statutory text. Here, on the other hand, this Court is faced with the OCC's interpretation of its own notice-and-comment regulation. Therefore, the interpretive rule analysis that Plaintiffs propose is inapplicable, and since they do not challenge the validity of 12 C.F.R. § 7.4002(a), there is no need for this Court to analyze whether the regulation is consistent with the OCC's statutory mandate (i.e., to engage in a *Chevron* analysis).

> *Auer v. Robbins* offer[s] the standard to be used where an agency interprets its own regulation. *Auer v. Robbins,* 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997); *see Christensen v. Harris County,* 529 U.S. 576, 588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). To determine whether *Auer* deference is appropriate, the court must first consider whether the language of the regulation is ambiguous. *Id.* at 588, 120 S.Ct. 1655. . . . [W]here . . . [a] regulation is ambiguous as to the precise issue in contest, an agency's interpretation of its own regulation is controlling unless it is clearly erroneous. *Auer v. Robbins,* 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997).

16

*Wells Fargo Bank of Texas N.A. v. James*, 321 F.3d 488, 494 (5th Cir. 2003). In this case, the relevant regulations construed by the OCC are 12 C.F.R. § 7.4002(a) and 12 C.F.R. § 7.4007(c).

> State laws that are not preempted. State laws on the following subjects are not inconsistent with the deposit-taking powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' deposit-taking powers: . . . (4) Rights to collect debts."

12 C.F.R. § 7.4007(c)

Since § 7.4002(a) does not specifically address the type of fees that may be charged, or who the bank's customers are, this Court concludes that it is ambiguous on these issues. Similarly, § 7.4007(c) does not indicate what exactly "rights to collect debts" means. Under these circumstances, the OCC's interpretation of its regulations should control unless clearly erroneous. Since the OCC has suggested a reasonable meaning for each regulation, its opinion on the permissibility of garnishment procedures of Defendant banks is controlling.

### 2. Preemption as to state banks

Sky Bank implores this Court to find that the portion of § 2716.12 preempted by the National Banking Act is not capable of severance and application to state banks. It is, therefore, necessary to briefly address this issue.

> The severance test in Ohio involves three separate questions:
>
> (1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?

*State v. Foster*, 109 Ohio St.3d 1,28-29, 845 N.E.2d 470, 497 (2006). In this case, Defendant Sky Bank argues that § 2716.12 fails the severance test on several levels. Sky argues that § 2716.12's

failure to distinguish between national bank garnishees and state bank garnishees prevents this Court from separating the provisions of the statute. But just because the legislature chose encompassing terms to refer to both state and national banks does not mean that the subsequent limitation of the term requires it to be stricken as applied to all parties. Here the term "garnishee" is preempted as it relates to national banks; but nothing in this Court's holding limits its application to state banks.

Sky also argues that the Ohio Legislature intended to give state banks the same rights, powers, and privileges as national banks, requiring this Court to find that it is impossible to give effect to the legislature's apparent intention if this Court allows § 2716.12 to be applied solely to state banks. Ohio Rev. Code § 1131.05(A)(5) provides that:

> Notwithstanding any provisions of the Revised Code, except as provided in division (E) of this section, the superintendent of financial institutions shall, by rule, grant banks doing business under authority granted by the superintendent any right, power, privilege, or benefit possessed, by virtue of statute, rule, regulation, interpretation, or judicial decision, by any of the following:
> ***
> (5) Any other banks, savings associations, or credit unions with a principal place of business in the United States doing business under authority granted under laws of the United States."

Ohio Rev. Code § 1121.05.

However, while it is true that Ohio Revised Code § 1121.05 expresses a desire to ensure equal footing between national and state banks, it is beyond the realm of this Court to presume from such a generic expression that application of § 2716.12 to state banks runs completely contrary to the legislature's intent.

18

Sky does not argue that the insertion of words or terms is necessary to separate the constitutional and unconstitutional provisions of the statute.  Therefore, the third severance question need not be addressed.

**IV. Conclusion**

Defendants' motions to dismiss are hereby granted (Doc. 64, 66, 67, 72).  Case dismissed.

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE